IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 13-30059 |
| | ) | |
| PAVEL LEIVA, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

This is a question of linguistic interpretation <u>and</u> context.

Pending before the Court is Defendant Pavel Leiva's Motion to Suppress Evidence.  Defendant Leiva moves, pursuant to the Fourth Amendment of the United States Constitution, for the entry of an Order suppressing all evidence found pursuant to the alleged unconstitutional seizure and search of the Defendant's rental vehicle following a traffic stop on June 26, 2013.  The Defendant seeks the exclusion of all evidence obtained as fruits of the warrantless seizure and search.

The Government filed a Response and Supplemental Response and

the Defendant filed a Reply. Following an evidentiary hearing on November 6, 2013, United States Magistrate Judge Byron G. Cudmore entered a Report and Recommendation on November 26, 2013, wherein he recommended that the Motion to Suppress be Denied. On December 10, 2013, the Defendant filed an Objection to the Report and Recommendation.

## I.

A grand jury returned a two-count indictment against Defendant Leiva and two co-Defendants, charging them with conspiracy to possess and use counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(1) & (a)(3) ("Count One"), and possession of fifteen or more counterfeit credit cards, in violation of 18 U.S.C. § 1029(a)(3) ("Count Two").

The Defendant contends that the Fourth Amendment requires the suppression of all items found in the rental vehicle, in addition to any and all evidence derived from the warrantless seizure and search, including the statements made by co-Defendants Amberly Martin and Paula Gallego, as fruits of the unconstitutional seizure and search.

The Defendant alleges the officer who initiated the traffic stop did not have probable cause or reasonable suspicion to seize the vehicle. Mr. Leiva claims he did not commit a traffic violation. Moreover the Defendant, who speaks Spanish and not English, did not consent to the search of the vehicle.

Based on the testimony of Trooper Dustin Weiss and co-Defendant Martin, the magistrate judge recommends finding that there was probable cause to believe that the Hyundai Elantra driven by Defendant Leiva veered off of the main roadway of I-55 onto the emergency lane or shoulder. Martin testified that Leiva swerved onto the emergency lane. She did not know whether the Defendant used his traffic signal. Regardless of whether a signal was used, this is a traffic violation under Illinois law. See 625 ILCS 5/11-709.1. Accordingly, the magistrate judge recommends finding that the stop was valid.

The parties dispute whether the Defendant consented to the search of the rental car when he was asked, "Puedo buscar su coche?". Veronica Espina and Tara Poetzsher, both of whom are certified to teach Spanish,

and Maria Aguas, a Spanish translator, all testified that the phrase used by the officer meant, "Can I look for your car?", "Can I search for your car?", "Can I locate your car?", or "Can I get your car?". Each testified the phrase did not mean, "Can I search your car?". Because the Defendant claims he was never asked for consent to a search of the vehicle, therefore, he could not have provided consent.

The Government asserts that based on the context of what the officer asked and all of the circumstances, the Defendant knew that the officer was asking if he would consent to a search of the vehicle. The Government claims he answered affirmatively in both English and Spanish.

Judge Cudmore recommends finding that it was apparent the officer was asking for permission to search the car. The Report and Recommendation states that the officer testified that Defendant responded affirmatively in English by saying, "Yes," and then in Spanish, "Si." The magistrate judge recommends finding that a preponderance of the evidence establishes that Defendant consented.

Accordingly, Judge Cudmore recommends that Defendant's Motion

to Suppress Evidence be Denied.

II.

(A)

The Defendant objects to the Report and Recommendation, contending that the Court should reject the magistrate judge's recommendation and grant the Defendant's Motion to Suppress because he did not commit a traffic violation and did not voluntarily consent to a search of his rental vehicle.

The Defendant first notes that the statute instructs a magistrate judge to issue "findings of fact," see 28 U.S.C. § 636(b)(1)(B), and alleges that the Report and Recommendation does not set forth "findings of fact." Rather, it includes a "Statement of Facts." The Defendant claims that although it is uncertain whether the "Statement of Facts" constitutes findings, he does not believe that it can. For example, the "Statement" provides, "Weiss testified that he asked Gallego for consent to search and she agreed. Gallego testified that she was not asked for consent to search." Because the sentences contradict each other, the Defendant contends that

5

the sentences cannot constitute "Findings." Accordingly, the Defendant argues that the Court should reject the report because it does not set forth "findings of fact," as expressly required by Congress in 28 U.S.C. § 636(b)(1)(B).[1]

The Court rejects the Defendant's interpretation of § 636(b)(1)(B). First, the Court does not believe that the statute requires the magistrate judge to ignore any and all factual disputes that may arise at an evidentiary hearing and to simply credit the testimony of one witness and designate that as his "finding," while ignoring contrary evidence. The magistrate judge must submit "proposed findings of fact." See 28 U.S.C. § 636(b)(1)(B). Trooper Weiss either asked Gallego for consent to search or he did not. Therefore, one of those statements is a "proposed finding of fact," as required by the statute. The Court concludes that the fact that an inconsistent "proposed finding of fact" is mentioned by the magistrate judge is not a proper basis for rejecting the Report and Recommendation.

---

[1]Although the Defendant cites 28 U.S.C. § 636(b)(1)(C), the phrase "findings of fact" does not appear in that subsection. The Court assumes the Defendant intended to refer to 28 U.S.C. § 636(b)(1)(B).

To the extent the Defendant is contending that the Report and Recommendation should be rejected because a section is labeled "Statement of Facts" instead of "proposed findings of fact," see 28 U.S.C. § 636(b)(1)(B), or "proposed findings and recommendations," see 28 U.S.C. § 636(b)(1)(C), the Court disagrees and thus declines to reject the Report and Recommendation on that basis.

The Defendant next objects to the finding that "Trooper Weiss observed the Hyundai swerve onto the shoulder, or emergency lane, and then pull back onto the main roadway." See Doc. No. 53, at 2. The Defendant states that he recalls Trooper Weiss testified that the rental vehicle crossed over into the on-ramp lane leading from a rest area. The audio recording of the hearing confirms that Trooper Weiss testified the vehicle swerved onto the shoulder.

The Defendant next objects to the magistrate judge's finding that Trooper Weiss asked him to come back to his vehicle. The Defendant claims, "It is our recollection that Trooper Weiss testified that he ordered Leiva to exit the rental vehicle and walk to Weiss's patrol vehicle by

announcing the command from the patrol vehicle. At this point, Gallego would have translated the command for Leiva." See Doc. No. 55, at 3. The Court finds that it is not clear from the recording whether the command was issued while Weiss was at the passenger window of the rental car or at his patrol vehicle.

Based on Trooper Weiss's testimony, the magistrate judge found that "Weiss could see the artery in Leiva's neck pulsate." See Doc. No. 53, at 3. The Defendant notes that Weiss also testified that he had no idea how Mr. Leiva's carotid artery typically pulsated.[2] Weiss testified consistent with both statements. Therefore, the Defendant's objection to the finding is without merit.

The magistrate judge next found that Trooper Weiss asked the Defendant, "Pueda buscar su coche?" See id. The Defendant objects to the finding and claims Weiss testified that he asked Leiva, "Puedo bucar su coche?" He alleges that the form used by Weiss included the phrase

---

[2]To the extent that Defendant is suggesting he did not appear to be nervous during the traffic stop, Ms. Martin testified that all three individuals were "really nervous" when the police car activated its lights behind the car driven by Mr. Leiva.

"Puedo buscar su coche."  It is not apparent from the recording of the hearing precisely which of the above phrases was used.  In answering a question on cross-examination, it appears Weiss testified that he used the word "buscar."

The magistrate judge found that Trooper Weiss believed the phrase meant, "Can I search your car?"  The report and recommendation provides that Leiva responded, "Yes," and nodded his head.  Weiss said, "Si?"  The Defendant responded, "Si."  See Doc. No 53, at 3.

The Defendant objects to this finding, claiming that it is incredible that Defendant responded with the English word "Yes," because he speaks no English whatsoever.  Maria Aguas testified that in the numerous hours she has translated for the Defendant, she has never heard him utter the English word "Yes."  The two co-Defendants also testified that Defendant spoke no English whatsoever.  See Doc. No. 55, at 3-4.

Trooper Weiss testified that Mr. Leiva "looked at me and said 'Yes' in English when he nodded his head up and down."  It is not clear from the recording whether the Defendant actually said the word or gestured in a

manner that would be interpreted as an affirmative response or both, before confirming his assent by saying "Si." Accordingly, the Court need not determine whether the Defendant actually uttered the word, "Yes."

The Report and Recommendation states Trooper Weiss testified that he asked the front seat passenger for consent to search the vehicle and she agreed. Gallego testified that she was not asked for consent to search. See Doc. No. 53, at 4. The Defendant claims this is another reason to discredit Weiss's testimony. It was not mentioned in a police report or any other time prior to the hearing that Gallego was asked for consent to search the rental vehicle. Because the resolution of whether Gallego was asked for and provided consent to search the vehicle is not necessary to the motion to suppress, the Court need not make a specific finding on this issue.

The magistrate judge also found, "Leiva was present outside the Hyundai throughout the search." See Doc. No. 53, at 4. The Defendant objects to this finding, stating:

> [T]he testimony was that Leiva was present outside Weiss's patrol vehicle throughout the search, and that his patrol vehicle was 20 to 25 feet from the rental vehicle. Weiss and the other officers also testified that they paid no attention to Leiva during

the search of the rental vehicle.

See Doc. No. 55, at 4. The basis of the Defendant's objection is difficult to understand. The report and recommendation did not say that Defendant was inside the Hyundai or any of the police vehicles. If, as the Defendant says, he was present outside of the patrol vehicle which was 20 to 25 feet from the rental vehicle, then the Court is unable to conclude that it was incorrect for the magistrate judge to find that "Leiva was present outside the Hyundai throughout the search." The record seems to establish that Leiva was not inside any of the vehicles. Moreover, whether any of the officers were paying attention to the Defendant at this time is irrelevant to the magistrate judge's finding.

The magistrate judge found that Illinois State Police Lieutenant Canizares "took Spanish in college." See Doc. No. 53, at 6. The Defendant says he has no recollection that Canizares testified he "took Spanish in college." The recording establishes that he did so testify. However, the Defendant states that Canizares "freely admitted that he had no formal training as a Spanish instructor or translator, or that he had ever

done interpretation or translation before." See Doc. No. 55, at 5. A review of the recording shows that he did testify he had no such training. Because the Report and Recommendation does not state that Lieutenant Canizares had formal training as a Spanish instructor or translator or whether he had ever previously done translation, however, the Court concludes there is no objection to resolve.

The Report and Recommendation states that Trooper Kevin Marrie transported one of the co-Defendants to the Springfield headquarters. He later searched his vehicle and "discovered cards in one of the two names on the fake driver's licenses and four to five gift cards." See Doc. No. 53, at 6. In his Objections, the Defendant states that it is his recollection that the co-Defendant referred to by Trooper Marrie is Paulo Gallego. That is correct.

The Report and Recommendation states as follows:

> At the hearing, Canizares reviewed the sheet of phrases used by Trooper Weiss. He testified that the phrase 'Puedo buscar su coche?' meant, 'Can I search your car?' On cross examination, Canizares testified that the Spanish verb 'buscar' means to search or find.

See Doc. No. 53, at 6. The Defendant objects to the magistrate judge crediting this testimony, stating:

> On cross-examination, Canizares testified that the Spanish verb "buscar" meant "to search for," not "to search." Moreover, when Canizares testified that "Puedo buscar su coche" meant "Can I search your car?" his demeanor was remarkably different than his other translations contained on the sheet. That demeanor, including a head shake and a look upward with his eyes, indicated that, in answering the question, he was testifying as to what the form said, and not testifying as to how he would communicate the phrase "Can I search your car," or how he would ask this question in Spanish. The magistrate judge thus should not have credited this testimony (if in fact he credited it), especially since it contradicts all of the other testimony at the suppression hearing.

See Doc. No. 55, at 5. The recording indicates that on cross-examination Canizares testified that "buscar" has several meanings, including "find" or "search." The Court is unable to determine if the Defendant's interpretation of Canizares's demeanor is accurate.

As for whether the magistrate judge credited the testimony, it appears from reviewing the Report and Recommendation that his decision was based primarily on the context of the words that were used. He specifically noted that Defendant's three witnesses disagreed with Canizares's

determination. Therefore, the Court does not believe the magistrate judge simply credited the testimony while rejecting that of the Defendant's experts.

In identifying the three witnesses called by the Defendant, the Report and Recommendation stated:

> Espina teaches Spanish at the University of Illinois Springfield. Espina grew up in Chile and received her undergraduate degree in Chile. Poetzscher was a high school language teacher certified to teach Spanish. Aguas was the Spanish translator used by this Court and by the Federal Defender's Office.

See Doc. No. 53, at 6. The Defendant objects on the basis that the magistrate judge did not adequately set forth the qualifications of his three experts. This is particularly true as to Ms. Espina, who is an expert in the Spanish language. There is no question that each of the witnesses has very impressive credentials. However, it is apparent that the paragraph in the Report and Recommendation establishes that the three witnesses are more than qualified to testify as to what Spanish words or phrases mean in English. Because it appears that was the primary reason the three individuals were called as witnesses, the Court concludes that the paragraph

in the Report and Recommendation adequately describes the qualifications of the witnesses.

The magistrate judge notes that Espina's written analysis of the phrase "Puedo buscar su coche?" was admitted into evidence. Espina stated:

> Semantic problem. This is a literal translation that results in a wrong and confusing meaning, which creates a question out of context. The question could literally mean the following:
>
> !    May I get your car?
> !    May I locate your car?
> !    May I look for your car?

See Doc. No. 53, at 7. The Report and Recommendation further states, "On cross examination, the witnesses agreed that the context in which a question is asked is important in determining its meaning." Id. The Defendant objects and contends that the three Defense witnesses testified that context would not alter the plain meaning of a phrase, nor did they testify that the circumstances of the case altered the question Trooper Weiss asked. Upon listening to the audio recording, the Court agrees with the Defendant that the witnesses he called did not testify that the context

of a question is important in determining its meaning.

Espina testified that context might have mattered if the officer had used the word "en," which means "inside," but Trooper Weiss did not use that word in asking the question.

(B)

The Defendant further contends that the magistrate judge's "Statement of Facts" did not include certain information. First, the Defendant claims the testimony showed that Trooper Weiss's Spanish translation document included a number of inaccurate translations of English phrases. Moreover, Weiss admitted that he did not have consent to search an item such as a wallet if he only asked, and was given, consent to locate it.

The Defendant further notes that he and Trooper Weiss could not converse with each other, not even in broken English or broken Spanish. Trooper Weiss did not use hand gestures in attempting to communicate with Mr. Leiva.

During the traffic stop, Trooper Weiss never asked the Defendant any

questions about the interior of the vehicle.  Weiss did not speak with or otherwise utilize the bilingual passengers after his initial encounter with Gallego at the passenger side of the car.

The Defendant states that Mr. Leiva was seated in Trooper Weiss's vehicle, approximately 20 to 25 feet from the rental vehicle, when he allegedly gave Weiss consent to locate, or look for the vehicle.

The Defendant further states that Trooper Weiss did not record the encounter, even though he had audio-recording ability (an I-Phone) and video-recording ability in that there were two other patrol cars with working cameras at the scene.

Trooper Weiss did not testify that he believed Mr. Leiva to be a drug courier, or that he suspected him of engaging in other criminal activity. Moreover, Weiss did not inform the Defendant that he was free to refuse consent.

Trooper Weiss acknowledged that although he could have obtained a translator to assist him, he did not do so.  Moreover, Weiss did not ask any other officer to witness his conversation with the Defendant, even

though other officers were present at the scene.

(C)

The Defendant claims that the "Statement of Facts" is inaccurate and incomplete, which is a sufficient reason to reject the Report and Recommendation. The Court disagrees.

Upon reviewing the record and the audio recording, the Court finds that the magistrate judge had an adequate basis for almost all of the factual findings contained in the Report and Recommendation. Any inaccuracies have been specifically noted.

The Court has further considered and incorporated the Defendant's additional proposed findings of fact.

III.

(A)

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Fourth Amendment protects the "security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile."  Hoffa v. United States, 385 U.S. 293, 301 (1966).  "Reasonableness" is the crucial inquiry in determining whether a search has violated the Fourth Amendment.  See Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 652 (1995).

A search does not violate the Fourth Amendment if a law enforcement officer obtains a valid consent to search.  See Schneckloth v. Bustamonte, 412 U.S. 218, 224-25 (1972).  The government has the burden of establishing by a preponderance of the evidence that the individual freely and voluntarily provided consent.  See United States v. Sandoval-Vasquez 435 F.3d 739, 744 (7th Cir. 2006).  Although police officers are not required to inform an individual he may refuse to consent to a search, knowledge of the right to refuse may be considered in determining the validity of consent.  See United States v. Drayton, 536 U.S. 194, 206-07 (2002) (citing Schneckloth, 412 U.S. at 227).  In considering whether an

individual has consented to a search, courts examine the totality of circumstances.  See id. at 207.

(B)

The Government first contended that Defendant lacks standing to contest the search because he did not have a subjective expectation of privacy essentially because he did not own the car and was traveling with co-conspirators who were aware of his alleged illegal activity, evidence of which was contained in the rental car.

Because an individual cannot assert another person's privacy rights, the non-owner of a car has standing to challenge the search only if he can establish he has a legitimate expectation of privacy, which exists if "(1) the defendant exhibits an actual or subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." United States v. Amaral-Estrada, 509 F.3d 820, 826-27 (7th Cir. 2007).

In United States v. Padilla, 508 U.S. 77 (1993), the United States Supreme Court rejected the circuit court's holding that there existed a "coconspirator exception" in determining whether evidence was obtained

in violation of the Fourth Amendment. See id. at 81. The circuit court had held that because an individual had a supervisory role and exerted significant control over a drug enterprise, he had an expectation of privacy and thus standing to challenge the search and seizure of various items found in an automobile–even though the defendant was not present during the traffic stop. See id. at 80-81. The Supreme Court reversed the circuit court and reiterated that only individuals whose Fourth Amendment rights were violated by the search had standing to seek the suppression of evidence. See id. at 81-82.

The Government's argument might have merit if Mr. Leiva was not present during the stop or if individuals other than his associates had access to the vehicle and no steps were taken by Leiva to hide the evidence of illegal activity. However, no such evidence was presented.

The logical conclusion of the Government's argument is that an individual accompanied by a co-conspirator or co-conspirators can never have standing to challenge the legality of a search of a borrowed or rented car, as long as the co-conspirators are aware that the car contains evidence

of illegal activity. The individual criminal would have standing as long as he did not allow others to have access to the vehicle, thereby demonstrating a subjective expectation of privacy. Padilla does not stand for that proposition. The Court in Padilla simply determined that because the defendant's individual rights were not violated, he did not have standing to challenge the search of a vehicle.

Because the Defendant here was a lawful driver of the vehicle, he has standing to assert a violation of his Fourth Amendment rights. Accordingly, the Court agrees with the magistrate judge's determination that, based on a reasonable expectation of privacy, Mr. Leiva has standing to challenge the search of the rental car.

(C)

(1)

The Defendant objects to the magistrate judge's recommendation that he committed a traffic violation. Based on the testimony of Trooper Weiss and co-Defendant Amberly Martin, who stated that Defendant swerved in to the emergency lane when the police officer was behind the rental car, the

22

Court concludes that the Defendant's objection on that point is without merit.[3]

In his analysis, the magistrate judge noted that the Defendant's witnesses stated that "Puedo buscar su coche?" meant, "Can I look for [or locate] your car?". They all disagreed with Lieutenant Canizares's interpretation of the phrase as, "Can I search your car?".

The magistrate judge recommends finding that the verb "buscar" can mean "to search," "to look," "to look for," or "to seek." The Court largely disagrees with this finding and concludes that it means "to locate," or "to search for," as the Defendant's witnesses testified.

The meaning of "buscar" obviously does not change based on the context in which it is used. Whatever the context, the word means "to locate" or "to search for." However, the Court rejects the Defendant's assertion that context plays no role in the overall inquiry. In considering whether an individual understood that officers were asking for consent to

_____

[3]The Court notes that Gallego testified that she did not observe the Defendant commit a traffic violation. She stated that she was not paying attention at the time.

search, a court may consider the context of the encounter in situations where there is a language barrier.  See United States v. Gutierrez, 221 F. App'x 446, 450 (7th Cir. 2007).  Although it would not determine or alter the literal meaning of a phrase, context can help explain the meaning that an individual intends to convey in a situation such as the traffic stop in this case.  The question is whether the Defendant understood that the officer was asking if he consented to a search of the rental vehicle.  The Court concludes that he did.

The Defendant states Trooper Weiss acknowledged that receiving permission to locate an item is not the same as obtaining permission to search an item.  "Can I locate your wallet" does not mean "Can I search your wallet."  However, if there is a language barrier between a police officer and an individual who has been subject to a traffic stop and the person's wallet is in plain view of both individuals, the first question would make little sense.  Under certain circumstances and depending on the context of the encounter–if, for example, the wallet is right in front of the two people– the Court believes that the person stopped would reasonably interpret the

officer's question as asking for consent to search the wallet. The same is true with respect to the car based on the circumstances here.

The magistrate judge stated as follows, "Leiva understood that Weiss was asking permission to take an action with respect to the Hyundai." See Doc. No. 53, at 15. The Defendant responded affirmatively. The Report and Recommendation provides that Leiva "was not boggled by the question as nonsensical." Id. Because the rental car had not been moved since the traffic stop, there was no reason for the officer to ask the Defendant if he could "locate" or "look for" a car that was 20 to 25 feet away from them. Although the Defendant objects to the magistrate judge's finding that the officer's question would have been "nonsensical," the Court agrees with that description. The Defendant states, "For all Leiva knew, Trooper Weiss wanted to check the pressure in his tires, or make sure that the license plates were attached correctly." Even if that were true, the question would make little sense because the rental car was in the same location right in front of them. Weiss would not need to ask Leiva if he could locate or look for the car in order to perform such tasks.

The evidence suggests that, after the police officer began pursuing the rental vehicle, Mr. Leiva was aware that it was possible the rental vehicle might be searched during a traffic stop. Ms. Martin and Ms. Gallego both testified there was evidence of illegal activity–fraudulent identifications and credit cards and merchandise purchased with the counterfeit credit cards–located in various parts of the car. The Defendant told both bilingual passengers that they better be quiet when the traffic stop was initiated. Martin testified that Defendant asked Gallego to retrieve the rental car agreement out of the glove box. There was testimony that the fraudulent driver's licenses and credit cards were located in the glove box. Gallego testified that Leiva told the other passengers to give him their false identifications, which were also in the glove box. This suggests the Defendant was afraid that evidence of illegal activity might be discovered if a search was conducted.

(2)

Neither the Government nor the Defendant has cited any controlling authority which is directly on point and the Court has found none. The

Court is not persuaded by the district court cases cited by the Defendant, each of which held that the Government could not meet its burden based on the facts of the particular case. None of those cases are analogous to the facts in this case.

In United States v. Mora-Morales, 807 F. Supp.2d 1017 (D. Kan. 2011), the district court determined that consent was not freely and unequivocally given after observing a video which demonstrated that defendants had difficulties understanding the officers, who were repeatedly asking questions and using hand motions. See id. at 1022. Here, there is no similar evidence that Mr. Leiva had difficulty understanding Trooper Weiss.

In United States v. Loya, 2006 WL 2135859 (D. Neb. 2006), the officer asked a series of one-word questions: "Pistolas?" "Drugas?" "Marijuana?" "Cocaine?" See id. at 2. The defendant responded to each inquiry in the negative. See id. The questions were repeated and the defendant again responded negatively. See id. The officer asked the defendant for permission to search the vehicle, using the word "escucar," or

"eschucar." See id. The defendant responded "no" in a confused voice but also nodded affirmatively and gestured toward the vehicle, which the officer interpreted as consent to search. Id. The court observed that "escucar" does not appear to be a word in the Spanish language, while "eschucar" apparently means "to listen" or "to heed." See id. at 5. At best, the defendant may have understood the officer's question as, "Would you give me to listen?" or "Would you give me to heed?" while gesturing toward the defendant's car. See id. Because the court concluded that the request to search was completely nonsensical and the totality of circumstances did not show that defendant understood the requests, the court concluded that he did not knowingly provide consent to search. See id. at 6-7.

In this case, although Trooper Weiss's question to Mr. Leiva was not properly phrased in Spanish, the Court believes that despite the language barrier, based on the circumstances of this case, an individual in Leiva's position following the traffic stop would have understood that Weiss was asking for consent to search the vehicle.

In United States v. Higareda-Santa Cruz, 826 F. Supp. 355 (D. Or.

1993), the district court determined that the defendant did not voluntarily consent to the search of his car because, based on his limited English skills, he did not understand that he could refuse the request.[4]  See id. at 359. That court also determined any consent was tainted by an illegal detention which, in the district court's view, exceeded the scope of the traffic stop and was a pretext to search for drugs.  See id. at 358-59.  As this Court earlier noted, an officer is not required to inform an individual that he or she may refuse to provide consent.  See Drayton, 536 U.S. at 206-07.  There is no evidence the Defendant here was coerced or confused by Trooper Weiss's question.  Moreover, Mr. Leiva was not detained illegally.  Accordingly, the facts of this case are not similar to Higareda-Santa Cruz.

In United States v. Gallego-Zapata, 630 F. Supp. 665 (D. Mass. 1986), the district court considered whether an individual with limited English skills had consented when the officer asked, "Is it OK to look? OK

---

[4]In another case, the Second Circuit observed that because of an individual's limited education and English skills, along with the fact that he was not told of his right to refuse to consent to the search, it doubted whether the individual had consented to a search.  See United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993).  However, the court determined it did not need to reach that issue.  See id.

to Look?" while pointing from his eyes to the defendant's jacket.  See id. at 675.  The defendant responded by shrugging his shoulders, turning his head and nodding his head up and down twice while lifting his eyebrows.  See id.  The court determined that this demonstrated resignation and could not be described as free and voluntary consent.  See id.  The court also suggested that even if the defendant's consent had been freely and voluntarily given, it was tainted by what the court found to be an illegal detention.  See id.  In this case, the Defendant nodded his head affirmatively and said, "Si."  Even if a demonstration of resignation negated a nonverbal expression of consent, there is nothing in the record tending to show that Defendant exhibited resignation which might suggest that his consent was not free and voluntary.[5]

    The Court does not find any of the foregoing district court cases relied on by the Defendant to be persuasive.  Based on the overall context of the encounter, the Court concludes that the Defendant provided consent to

---

[5]It is unfortunate that the traffic stop was not recorded.  Moreover, the Court recognizes that it might have been easier for Trooper Weiss to communicate with the Defendant if he had requested assistance from one of the bilingual passengers.

search the rental car.

According to Ms. Espina's analysis, one of the possible meanings of the question asked by Trooper Weiss is "May I look for your car?" Trooper Weiss could see the vehicle when he asked the question. Because the rental car was right in front of both men, an individual such as Mr. Leiva who had been subject to a traffic stop would know that the officer was not asking the driver's permission to "look for" the car. Based on all of the circumstances of the traffic stop, including Leiva's alleged statements to Martin and Gallego prior to stopping and his response to Weiss's question without any hesitation, the Court concludes that an individual such as the Defendant most likely would have interpreted the question as "May I look in your car?".

The magistrate judge correctly determined that based on these circumstances, the preponderance of the evidence shows that Mr. Leiva consented to the search of the rental car. The Defendant was not in custody and had been told he was free to go. Given the question that was asked and the presence of Trooper Weiss and the Defendant in proximity

to the vehicle, the Court finds that Leiva understood he was being asked for consent to search the car. Mr. Leiva provided consent by nodding his head and saying, "Si."

There is no basis to conclude the Defendant believed he had no choice and was required to consent to the search. The magistrate judge noted that, following his arrest, the Defendant declined to be interviewed after he was advised of his Miranda rights. Thus, he found that Mr. Leiva clearly knew how to say no to the police. The Defendant disputes that the decision to invoke his right to remain silent while in custody supports that finding. Rather, the fact that Mr. Leiva declined to be interviewed establishes he was unwilling to assist law enforcement which, he claims, bolsters the argument that consent was not voluntary.

The Court is not persuaded by the Defendant's argument. It is not uncommon for an individual to consent to a search of a vehicle (or other property) and then, upon the discovery of contraband, decline to answer a police officer's questions. Based on the circumstances of this case, the Court is unable to infer that the fact the Defendant declined to answer

questions during a custodial interrogation means that he did not earlier consent to a search of the rental vehicle following the traffic stop. The Court does not draw any strong inference as to what occurred during the traffic stop from the fact that Mr. Leiva declined to answer any questions after he was in custody. Those were two separate encounters.

The Court further agrees with the magistrate judge and concludes that Mr. Leiva's detention of 25-30 minutes (15 minutes prior to the search and 10-15 minutes to search) was not unreasonably long.

Based on the foregoing, upon considering the totality of the circumstances, the Court finds that the Government has established by a preponderance of the evidence that the Defendant voluntarily consented to the search of the rental car. Because the officer received valid consent, the Court concludes that the search did not violate the Fourth Amendment.

Ergo, the Defendant's Objections to the Report and Recommendation [d/e 55] are DENIED, as provided in this Order.

The Court ADOPTS the conclusion of the magistrate judge's Report and Recommendation [d/e 53], which recommended that the Motion to

Suppress be Denied.

The Defendant's Motion to Suppress Evidence [d/e 21] is DENIED.

The Government's Motion to Supplement the Record [d/e 56] is DENIED.

ENTER: March 7, 2014

FOR THE COURT:

_s/ Richard Mills_____
Richard Mills
United States District Judge