IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 13-30059 |
| | ) | |
| PAVEL LEIVA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

The Indictment in this case alleges a conspiracy to possess and use counterfeit credit cards, in violation of 18 U.S.C. § 1029(a)(1), (3) ("Count One"); and the possession of counterfeit credit cards, in violation of 18 U.S.C. § 1029(a)(3) ("Count Two"). Opening statements are set to begin on May 15, 2014.

Pending before the Court are a number of pre-trial motions.

## I. Notice of Intent to Offer and Motion to Exclude Rule 902 Evidence

The Government has filed a Notice of Intent to Offer Evidence pursuant to Rule 902(11) of the Federal Rules of Evidence. See Doc. No.

66.  The Government has also filed a Notice of Intent to Offer Evidence pursuant to Rule 902(12) of the Federal Rules of Evidence.  See Doc. No. 68.  Defendant Pavel Leiva has filed a Motion in Limine to Exclude much of this Evidence.   See Doc. No. 72.

Rule 902 lists items of evidence that are self-authenticating and do not require extrinsic evidence of authenticity in order to be admitted.  Rule 902(11) pertains to "Certified Domestic Records of a Regularly Conducted Activity" and provides for the admission of:

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record–and must make the record and certification available for inspection–so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11).  Rule 902(12) provides for the admission under certain circumstances of "Certified Foreign Records of a Regularly Conducted Activity."

The documents sought to be offered by the Government include a

number of business records as evidence of financial transactions. The Defendant does not object to the first five attachments to the Government's First Notice. These include: (1) Document Number 66, Attachment 6 at 8 (showing a transaction on June 26, 2013 in Romeoville, Illinois); (2) Document Number 66, Attachment 7 at 3 (showing a transaction on June 25, 2013 in River Forest, Illinois); and (3) the Attachment at Document Number 68 at pages 12 and 14 showing transactions on June 23, 2013 in Madison and Monona, Wisconsin). These self-authenticating documents involve transactions that occurred during the time and place of the alleged illegal activity: between June 21, 2013 and June 26, 2013, in Illinois and Wisconsin.

The Defendant contends the transactions which occurred outside of Wisconsin and Illinois and at a time other than June of 2013 have nothing to do with this case and should be excluded as irrelevant. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The Government contends that the proposed evidence is relevant based on one of the elements it must prove at trial. It must prove that Defendant possessed counterfeit access devices or, as to the conspiracy count, he conspired to possess and use such access devices. The Government claims that during the traffic stop when he was arrested, the Defendant had several credit cards in his possession. The records sought to be admitted are relevant to show that the account numbers on the Defendant's fraudulent cards all belonged to legitimate accounts. Although certain records contain no evidence of illegal transactions, the Government seeks to show that such records are relevant in that they reflect active accounts tied to the account numbers on the alleged fraudulent cards in the Defendant's possession. Thus, legitimate accounts were associated with the cards.

Based on the Government's asserted justification for presenting this evidence, the Court concludes the evidence which is the subject of the Defendant's motion meets the definition of "relevant" as defined in Rule 401.

The Defendant claims that, even if they are relevant, the records should be excluded under Rule 403 of the Federal Rules of Evidence. Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Defendant asserts the introduction of the documents would result in prejudice because the jury may infer that the transactions listed therein were fraudulent transactions that he conducted. Additionally, the documents confuse the issues and might mislead the jury and waste time by referencing transactions that do not pertain to the alleged offense conduct in this case.

The Court is unable to conclude that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice, confusion of the issues or any other basis of exclusion listed in Rule 403. Undoubtedly, there will be a significant amount of testimony and evidence regarding the time period and geographical location of the alleged offenses. Accordingly, the Court concludes it is not likely the jury would infer that

documents referring to transactions occurring at a different time and location are part of the alleged offense. Moreover, based on the limited number of records sought to be introduced, the Court does not believe they would result in confusion of the issues, serve to mislead the jury or waste time.

Additionally, the Court will consider an appropriate limiting instruction to the jury if any of these concerns are present upon the introduction of this evidence.

Based on the foregoing, the Defendant's Motion in Limine to Exclude the Government's Rule 902(11) & (12) evidence will be DENIED.

## II. Motion in Limine to Exclude Expert Testimony

Pending also is the Defendant's Motion in Limine to Exclude Expert Witness Testimony. See Doc. No. 73. Specifically, the Defendant seeks to exclude the proposed expert testimony of Matthew McWilliams, a Special Agent with the United States Secret Service. The Defendant claims the introduction of this testimony would violate several evidentiary rules.

(A)

The Defendant notes the Government proposes to introduce expert testimony from Special Agent McWilliams "about common methods utilized by individuals to obtain credit card numbers without the authorization of the account holder." See Doc. No 67, at 2. The basis of such knowledge apparently comes from "numerous conversations with counterfeiters and access device fraud suspects concerning their methods of operation, to include the acquisition and use of account numbers and re-encoding equipment, in the course of investigative interviews." Id.

The Defendant first alleges this proposed testimony is irrelevant under Rule 401 because the allegations here involve possession and use of counterfeit credit cards, not the manufacture, production or procurement of counterfeit credit cards. The Defendant states he believes the Government's evidence will show that the counterfeit credit cards were mailed to one of the alleged co-conspirators in Wisconsin. Any evidence of how the credit cards were created or how the unknown individual was able to obtain the account numbers is irrelevant to whether or not the Defendant possessed, or conspired to possess and use, counterfeit credit

cards. Because the Government did not charge the Defendant with production of counterfeit credit cards, he alleges that any information about how account numbers are obtained is irrelevant and Special Agent McWilliams's proposed testimony should be excluded under Rules 401 and 402.

The Government states that for most of his 16-year career with the Secret Service, Agent McWilliams has been investigating financial crimes involving counterfeit, altered, or fraudulent access devices and/or credit cards. He has degrees in Criminology and Criminal Justice. Agent McWilliams's resume provides that he has received extensive training in investigating violations of federal counterfeiting statutes. Moreover, Agent McWilliams has testified in numerous judicial proceedings regarding fraudulent access device violations.

According to the Government, Agent McWilliams is expected to testify about how credit transactions work, both legitimately and illegitimately. The encoded magnetic strip on the back of the card is what makes legitimate transactions work. Normally, this strip carries the

identifying information of the card holder and the account number. A card reader will read that information and telephonically or wirelessly connect to the bank to ensure that the account exists and the proper funds are present, before the transaction is completed. If the magnetic strip is not encoded or is fraudulent, the transaction either will not process (if it's not encoded) or it can show the legitimate account holder's name at the register when the card is swiped.

The Government claims this information is highly relevant in light of how the Defendant and his co-conspirators are alleged to have used fraudulent credit cards. None of the cards had been encoded. The names on the credit cards were fictitious. In order for a transaction to work, therefore, the conspirators had to have the cashier key in the account number listed on the front of the card. The Government states that this may have been a conscious choice of the Defendant in order to avoid having the legitimate account holder's name appear on the register during any transactions. The legitimate account holder's name would have been different than the fictitious name on the front of the card. Alternatively,

the conspirators may not have had access to the legitimate account holders' identities to encode the magnetic strip. The Government claims that a limited amount of testimony about how account numbers can be fraudulently obtained in conjunction with how credit card transactions work in general will assist the jury in understanding why the Defendant and his co-conspirators were using the cards in the manner as alleged.

Based on the Government's representations of the proposed testimony and the allegations as to the nature of the alleged scheme, the Court concludes that Agent McWilliams's proposed testimony is relevant pursuant to the scope of Rule 401.

The Defendant further asserts the proposed testimony should be excluded under Rule 403. The testimony would be a waste of time because the jury will not need to know anything about how individuals obtain credit cards in order to determine whether the Defendant possessed and used the credit cards found in the rental car (and/or conspired to do so). Moreover, the Defendant alleges the testimony should be excluded in order to prevent any improper inference by the jury that Defendant was responsible for

obtaining the account numbers and producing the counterfeit credit cards. Additionally, this unnecessary evidence is subject to exclusion because it is confusing and potentially misleading.

For the reasons previously discussed, the Court disagrees that the testimony would be a waste of time. The information about how legitimate and illegitimate credit transactions work could be beneficial to the jury. Moreover, because Counsel would have an opportunity to cross-examine the witness and present other evidence, the Court does not believe the jury would improperly infer that Defendant was responsible for obtaining the account numbers and producing the counterfeit credit cards. Accordingly, the Court is unable to conclude that the probative value of the proposed testimony is substantially outweighed by the danger of unfair prejudice or any of the other bases of exclusion noted in Rule 403.

(B)

The Defendant further contends the testimony must be excluded pursuant to Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods;

(d) the expert has reliably applied the principles and methods to the facts of this case.

Fed. R. Evid. 702. The Defendant asserts Agent McWilliams's proposed testimony will not help the jury understand the evidence or determine a fact because information on the methods used to obtain account numbers is irrelevant to whether the Defendant possessed, or conspired to possess, the credit cards found in the rental car.

Additionally, the Defendant alleges the basis of Agent McWilliams's knowledge and his proposed testimony is not apparent. It is unknown how many interviews and conversations he has had with counterfeiters and access device fraud suspects. Without this information, it is impossible to determine whether the facts are sufficient to allow for the proposed testimony.

The Defendant further contends that the Government has not

established any scientific basis for the proposed testimony. He claims that conversations with criminals cannot be the basis of reliable principles and data required under Rule 702(c).

The advisory committee notes provide in part:

> Nothing in this amendment is intended to suggest that experience alone–or experience in conjunction with other knowledge, skill, training or education–may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

Fed. R. Evid. 702 advisory committee's note. The note further states, "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id.

The Court disagrees with the Defendant's assertion that conversations with counterfeiters and access device fraud suspects concerning their methods of operation cannot be the product of reliable principles and methods. When combined with other observations during the course of

many investigations, such evidence of experience can meet the standard of Rule 702. The observations of experienced officers investigating drug trafficking has been determined to be expert testimony. See United States v. Oriedo, 498 F.3d 593, 603 (7th Cir. 2007); see also United States v. Glover, 479 F.3d 511, 516 (7th Cir. 2007). Generally, the Seventh Circuit has not carefully examined whether such testimony is the product of reliable principles and methods. The court has approved such testimony when the investigating officer brings his wealth of "experience as a narcotics officer to bear on those observations and made connections for the jury based on that specialized knowledge." Oriedo, 498 F.3d at 603.

The Government states that Agent McWilliams's proposed testimony will be akin to that of a drug expert testifying about drug trafficking methods (packaging, distribution amounts, etc.) in a drug trial. It will help the jury understand how the Defendant was able to process certain transactions without encoded magnetic strips, and why the conspirators possessed and were using several cards instead of just one or two.

The Court agrees that the proposed testimony potentially appears to

meet the requirements of Rule 702.  The Defendant states it is unclear how many "conversations" and "interviews" Agent McWilliams has had in the course of his investigations.  Although it appears Agent McWilliams has significant experience investigating crimes such as those charged in this case, the Defendant will have an opportunity to question him about his qualifications as an expert.

The Defendant also claims the proposed testimony is subject to exclusion under Rule 703 which states, in part, that the expert must "base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  The Defendant notes that the proposed expert testimony is based on his conversations with criminals and investigations in other cases.  Because Agent McWilliams's testimony appears to be based on facts associated with other cases, therefore, the Defendant alleges it is subject to exclusion under Rule 703.

The Defendant is incorrect.  The rule does not prohibit an experienced investigator from relying on observations from previous cases.  If qualified as an expert, the witness is not precluded from using the

experience gleaned from those cases in formulating an opinion. Based on his experience, the expert witness can also base an opinion in this particular case on facts or data that he has been made aware of or that he has personally observed during the investigation.

Accordingly, the Defendant's Motion in Limine to Exclude the Proposed Expert Testimony is Denied, subject to Agent McWilliams's qualification as an expert witness.

### III. Government's Motion in Limine on Impeachment

The Government has filed a Motion in Limine wherein it asks the Court, pursuant to Rule 609 of the Federal Rules of Evidence, to restrict the Defendant from impeaching Amberly Michelle Martin and Paola Gallego with any prior convictions other than a theft conviction against Martin. Martin and Gallego are co-Defendants in this case. See Doc. No. 70. Rule 609(a) applies to attacking a witness's character for truthfulness by evidence of a criminal conviction. According to the rule, a felony conviction generally must be admitted, subject to Rule 403, if the witness is not a defendant. See Fed. R. Evid. 609(a)(1)(A). For misdemeanors,

"the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving–or the witness's admitting–a dishonest act or false statement."

The Government states it has diligently inquired as to the criminal records of these witnesses. Attached to its motion as Exhibits 1 through 8 are the results of its inquiry. The Government alleges Gallego does not have any prior convictions which could be used to impeach her credibility under Rule 609.

(A)

Exhibit 1 appears to be the record of a petit theft conviction for Martin in case number 48-02-CF-11564-O/A, wherein the judgment was entered on April 2, 2003. As reflected in Exhibit 2, Martin appears to have another petit theft conviction in case number 2011-MM-005540-A-O. The judgment is dated June 29, 2011. These convictions both involve a dishonest act and can be admitted for impeachment purposes.

The Government contends that except for the two petit theft convictions, Martin does not have any prior convictions which could be

used to impeach her under Rule 609 of the Federal Rules of Evidence. Accordingly, the Government seeks the entry of an Order prohibiting the Defendant from using any prior arrests, charges or convictions to impeach Gallego or Martin at the trial, except for the petit theft convictions against Martin.

The Defendant opposes the Government's Motion. First, the Defendant asserts he should be allowed to impeach Martin with a 2003 Florida conviction for prostitution, case number 48-02-CF-11564-O/A. This conviction is related to the 2003 theft conviction. Martin was charged and convicted of theft and prostitution and she received concurrent sentences for each conviction. Because the theft conviction can be used to impeach Martin, the Defendant contends that prostitution conviction should be allowed as well.

For similar reasons, the Defendant further asserts that the Court should permit the Defendant to impeach Martin with a 2008 prostitution conviction, Case No. 48-2008-MM-001468-A-O. The Defendant contends that the second prostitution conviction solidifies Martin's willingness to

prostitute herself as a means of commerce. The Defendant alleges there will be testimony regarding whether the Defendant or one of the co-Defendants paid for certain items. He asserts this testimony is relevant because the Government has alleged a conspiracy between these three people. The Defendant claims it is highly relevant for the jury to know that one of the co-Defendants deals in currency other than legal tender. Therefore, the Defendant contends the jury should have this information in order to assess her credibility.

The Court is unable to find that the evidence of Martin's prostitution convictions is relevant for impeachment purposes. The Defendant is charged with conspiracy to possess and use counterfeit credit cards and possession of counterfeit credit cards. As the Court understands the evidence, the issue of whether the Defendant or one of the co-Defendants paid for certain items will pertain to credit card transactions. There is no allegation of which the Court is aware that an act of prostitution occurred in relation to a financial transaction at issue in this case. If such evidence exists, then Martin's misdemeanor prostitution convictions would be

admissible for impeachment purposes.  Otherwise, the convictions do not appear to be a proper means of impeachment under Rule 609.

The Defendant further claims that this evidence of prior bad acts is admissible under Rule 404(b).  Rule 404(b)(1) provides, "Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Rule 404(b)(2) provides in part, "The evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

The Defendant contends the jury should know that Martin has a history of prostituting herself.  As noted above, this "reverse 404(b)" evidence can be admitted in limited circumstances, such as if it serves to negate the Defendant's guilt.  See United States v. Sanders, 708 F.3d 976, 992 (7th Cir. 2013).  However, as discussed above, the issue of whether any individual committed an act of prostitution would not appear to have anything to do with the allegations of this case.  Because that is the only

suggested basis of relevancy, the Court concludes Martin's prostitution convictions are not admissible under Rule 404(b).

The Defendant next contends the Court should permit him to impeach Martin with a 2008 Florida felony conviction for possession of cocaine, Case No. 4807 CF 17777OA, and her subsequent violation of probation in this case. The conviction was punishable by imprisonment of more than one year under Florida law. Accordingly, subject to Rule 403, the conviction must be admitted. See Fed. R. Evid. 609(a)(1)(A). The advisory committee's note provides in part:

> The probability that prior convictions of an ordinary government witness will be unduly prejudicial is low in most criminal cases. Since the behavior of the witness is not the issue in dispute in most cases, there is little chance that the trier of fact will misuse the convictions offered as impeachment evidence as propensity evidence. Thus, trial courts will be skeptical when the government objects to impeachment of its witnesses with prior convictions. Only when the government is able to point to a real danger of prejudice that is sufficient to outweigh substantially the probative value of the conviction for impeachment purposes will the conviction be excluded.

Fed. R. Evid. 609 advisory committee's note. Because the Government has not pointed specifically to any danger of prejudice that would result if the

conviction is used for impeachment purposes, the Court will permit the Defendant to impeach Martin with a 2008 Florida felony conviction for possession of cocaine and her subsequent violation of probation in this case.

The Defendant alleges the Court should permit him to impeach Martin with a 2010 incident in which she was arrested for breaking and entering, according to Florida Case Number 2010 CF 7313.  Rule 608(b) provides, in part, that the Court "may, on cross-examination, allow [specific instance's of a witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b). The Defendant claims this prior instance of misconduct is admissible because it is probative of Martin's truthfulness or untruthfulness, especially in light of her cooperation with the Government.

The Court disagrees.  An allegation that a witness committed an offense of breaking and entering may be evidence that an individual lacks respect for the law and the property of others.  However, such an allegation is no more probative of an individual's truthfulness or untruthfulness than

any other generic crime. The Defendant further claims that the prior breaking and entering incident should be admissible under Rule 404(b) because, in pre-trial statements, Martin minimized her conduct in this case. Because the Court does not have any specific information regarding this allegation, it has no basis to admit the breaking and entering allegation.

(B)

Next, the Defendant requests that the Court permit him to impeach Paola Gallego with a pending possession of marijuana charge out of Osceola County, Florida, as admitted by Gallego in a post-arrest statement. In that statement, according to the Government's discovery, Gallego stated that she needed money in order to pay for an attorney because she had been arrested for possession of marijuana within the last month. The Defendant contends this specific evidence of conduct is admissible under Rule 608(b) because it is "probative of the character for truthfulness or untruthfulness," especially in light of her cooperation with the Government in this case. In considering Gallego's credibility, the jury has a right to know that she admittedly committed the crime to assist in her defense of another crime.

The Defendant alleges this evidence impeaches Gallego's truthfulness because it shows she will break the law to benefit her situation.

For the reasons alleged by the Defendant, the Court agrees this is a proper line of inquiry on cross-examination. The statement may explain Gallego's motivation to commit the crime and her decision to cooperate with the Government. The Defendant has a right to inquire about these matters. To the extent Gallego stated her unlawful conduct in this case was in order to afford an attorney to represent her in defense of the marijuana charge in Florida, that specific instance of conduct may be inquired into by the Defendant on cross-examination pursuant to Rule 608.

## IV. Notice of Rule 404(b) Evidence and Defendant's Objection

The Government has filed a Notice of Intent to Produce Rule 404(b) evidence. Specifically, it seeks to introduce evidence that the Defendant and co-Defendant Paola Gallego traveled to the State of Utah and engaged in a similar credit card fraud scheme prior to the date of the credit card fraud scheme alleged in the Indictment.

The Defendant has filed a Response to the Government's Notice of

Intent, claiming that the evidence must be excluded because: (1) the evidence is improper propensity evidence and barred by Rule 404(b)(1); and (2) the evidence would be unfairly prejudicial, would confuse the issues and mislead the jury, and would amount to a waste of time, pursuant to Rule 403.

(A)

Once again Rule 404(b)(1) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b)(2) provides, in part, that the "evidence may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The list of permissible uses of bad-acts evidence in Rule 404(b) is not exhaustive. See United States v. Taylor, 522 F.3d 731, 735 (7th Cir. 2008). Courts use a four-part test in determining the admissibility of Rule 404(b) evidence, examining whether :

> (1) the evidence is directed towards establishing a matter other than the defendant's propensity to commit the crimes charged; (2) the other act is similar and close enough in time to be relevant; (3) the evidence is sufficient to support a jury finding that the defendant committed the other act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

United States v. Torres-Chavez, 744 F.3d 988, 991 (7th Cir. 2014).

In support of its Notice, the Government states that the Indictment alleges that Defendant, Gallego and Martin traveled from Florida to Wisconsin and then on to Illinois, where Gallego and Martin used counterfeit credit cards provided by the Defendant to purchase merchandise from various stores. The Government expects Gallego to testify that prior to this alleged conspiracy, she traveled with the Defendant from Florida to the State of Utah in 2013 and engaged in a similar credit card scheme as alleged in this case. According to Gallego, the Defendant gave her some counterfeit credit cards to use to purchase merchandise from various stores. The credit cards contained the name of another person. In addition to this anticipated testimony, the Government expects that Miguel Rodriguez-Feitoo will testify that he is a travel agent. The Government anticipates

Rodriguez-Feitoo will testify that on three or four occasions, he acquired airline tickets for the Defendant and Gallego to travel together from Florida to other places in the United States.

The Government states it believes the Defendant's strategy will be to assert that he was not a member of the conspiracy between Gallego and Martin to possess and use counterfeit credit cards. Rather, he was simply present when they committed the crimes. The defense will be that the Defendant did not jointly possess the counterfeit credit cards. The Government claims that if the Defendant intends to raise an "innocent bystander" defense then, in order to counter the defense, the Government should be entitled to show that the Defendant had previously engaged in the fraudulent conduct prior to the dates alleged in the Indictment. The Defendant claims that whatever the label, his defense is that he did not commit the crimes alleged in the Indictment.

The Government claims the evidence is not directed at establishing his propensity to commit crimes. Because both schemes allege two of the same participants, the Government claims that a jury could determine that

the Defendant's presence during the offenses charged in the Indictment is too coincidental and reject the "innocent bystander" defense. The Government further asserts that the evidence is similar in kind and close in time. The two schemes are virtually the same and both occurred in 2013. Accordingly, the Government claims it should be permitted to present evidence of the Utah scheme under Rule 404(b) to show the Defendants' intent, knowledge and absence of mistake or accident.

Relying on United States v. Lee, 724 F.3d 968 (7th Cir. 2013) and United States v. Miller, 673 F.3d 688 (7th Cir. 2012), the Defendant alleges the proposed evidence is propensity evidence and is not directed toward establishing intent, knowledge, or absence of mistake. The Defendant notes that the Government provides very little analysis as to how the proposed evidence can establish any of these permitted uses. Rather, the Defendant contends it purports to show that his presence during both offenses with the same person is too coincidental, thereby establishing his propensity to commit these crimes. Accordingly, the Defendant claims this evidence must be excluded.

In Torres-Chavez, the Seventh Circuit discussed the admission of

Rule 404(b) evidence in the form of a cooperating co-defendant's testimony

as follows:

> At trial, cooperating co-defendant Lucatero testified to
> prior uncharged drug dealing activity with Torres-Chavez. He
> testified that Torres-Chavez recruited him to accompany a truck
> driver (and a truckload of marijuana) on three cross-country
> trips from Phoenix to Chicago in the spring of 2007, the last of
> which ended in an interception by law enforcement. Lucatero
> was questioned when the truck was stopped but did not expose
> Torres-Chavez, thereby earning the latter's trust for future
> ventures. Lucatero also testified that he transported and
> distributed about seven kilograms of cocaine on behalf of
> Torres-Chavez on three separate occasions thereafter. The
> district court found the evidence admissible for the purpose of
> establishing the trusting relationship between Lucatero and the
> defendant, a contention of which Torres-Chavez does not
> challenge on appeal, and found that the three remaining prongs
> of the Rule 404(b) test were satisfied. The introduction of the
> evidence was accompanied by a limiting instruction.

Id. at 991. As in Torres-Chavez, the Court believes the evidence could be

admissible for the purpose of establishing a trusting relationship between

Gallego and the Defendant. It appears the Government's theory is that

Defendant may be the leader of the alleged conspiracy–at least to the extent

that he provided counterfeit credit cards to Gallego and Martin in order to

purchase merchandise from various stores. Because it seems unlikely that a stranger would be recruited to participate in an illegal scheme involving counterfeit credit cards, the Court believes that a potential use of this evidence would be to establish a trusting relationship between Gallego and the Defendant. Such testimony would be admissible for that purpose.

The Court concludes that if the Defendant employs an "innocent bystander" defense, the evidence would also be admissible to show intent and knowledge. In United States v. Causey, __ F.3d __, 2014 WL 1266294 (7th Cir. Mar. 28, 2014), the Seventh Circuit considered the defense that two other individuals masterminded a fraudulent scheme and the defendant was an innocent pawn. See id. at *5. The court determined that, because the defense was that he was not a leader of the scheme, the Government was permitted to introduce evidence the defendant led another scheme involving different individuals within six months of the charged scheme. See id. at *5-6. "While the line between propensity and intent/knowledge can sometimes be blurry, the Dudley transaction was directly relevant to whether Causey intended to defraud the buyers in the Chandler and Rainey

scheme and whether Causey knew of the scheme's fraudulent nature." See id. at *5. The court reached this result despite noting a number of differences between the two schemes. See id. at *6.

In this case, according to the Government, the alleged schemes are virtually identical. Like in Causey, the schemes occurred within six months of one another. When the characteristics of the scheme are sufficiently alike, they support an inference of criminal intent. See Causey, at *6. In this case, the characteristics of the alleged schemes are even more similar. Therefore, if the Defendant uses an "innocent bystander" defense, then the Government may present testimony pertaining to the Utah scheme to establish the Defendant's intent.

Because the act of engaging in a counterfeit credit card scheme requires some specialized knowledge, the Court further concludes that evidence the Defendant engaged in virtually the same scheme with one of the same individuals six months earlier would be admissible to show knowledge under Rule 404(b), in the event Defendant maintains he was simply present when illegal activity was occurring. If the other co-

Defendant were not present, this would be even stronger evidence of the Defendant's knowledge and that he was not an "innocent bystander."

The Defendant points to Miller and Lee in contending the evidence is inappropriate propensity evidence. In Miller, although the defendant had raised an innocent bystander defense, the Seventh Circuit determined that the district court's admission of evidence pertaining to a conviction for dealing drugs eight years earlier was forbidden propensity evidence, when he was charged with the same or a similar offense. In Lee, a conviction for possession of crack cocaine was determined to be inadmissible propensity evidence when the Defendant was charged with possession with intent to distribute crack cocaine five years later. See Lee, 724 F.3d at 979-80.

The Court is not persuaded by the Defendant's reliance on Miller and Lee. The Rule 404(b) evidence does not involve a conviction from several years earlier. It involves an allegation of exactly the same or very similar conduct within six months of the acts alleged in the Indictment.

Based on the foregoing, the Court concludes that the proposed evidence is not propensity evidence. If the Defendant employs the

"innocent bystander" defense, the Government shall be permitted to introduce this evidence to establish knowledge and intent. It could also be admissible to establish a trusting relationship between the Defendant and Gallego.

(B)

For the reasons previously discussed, the evidence is similar in kind. The Government states the alleged schemes are virtually the same. They were also close in time–within six months.

The Government further alleges the evidence is clear and convincing, in that the testimony of Gallego and Rodriguez-Feitoo, individually and in combination, is sufficient to find by a preponderance of the evidence that the other act occurred. "[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar." Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir. 2005). Because the testimony of a single eyewitness is enough to establish beyond a reasonable doubt that a defendant committed a criminal act, it follows that is sufficient to establish he committed an uncharged criminal

act by a preponderance of the evidence.[1]  See Torres-Chavez, 744 F.3d at 992.

The Government further contends that although the evidence might be prejudicial, it would be extremely probative and not unfairly prejudicial if the Defendant raises an "innocent bystander" defense.  The Defendant contends the evidence would be extremely prejudicial, in addition to confusing and misleading the jury and wasting time.

The Defendant states that if the jury hears the proposed testimony, it is extremely likely to infer from that evidence that he committed the allegations in this case.  Testimony about an unrelated trip to Utah does nothing to further the truth-seeking function on those issues.  The Court disagrees if the Defendant employs an "innocent bystander" defense.  It could be used to establish a trusting relationship between the Defendant and a co-Defendant.  Given the similarities between the alleged schemes and the closeness in time and specialized knowledge, the Court concludes

---

[1]Although the Court must find that the evidence is sufficient to support a jury finding, it agrees with the Defendant that it would be curious if there is no documentation of any fraudulent transactions that were committed in Utah.

the evidence could be used to establish intent and knowledge.

The Court finds that such evidence would be extremely probative. While the evidence might be prejudicial, it would not be unfairly prejudicial if the Defendant employs an "innocent bystander" defense suggesting that he was merely present while his co-Defendant or co-Defendants committed the crimes. Accordingly, if the Defendant employs an "innocent bystander" defense, the Court concludes that the probative value of the introduction of this evidence would not be outweighed by the danger of unfair prejudice.

The Defendant states that the proposed testimony is confusing because it involves alleged similar acts by similar people. Of course, it does involve similar acts by similar people. It would not be admissible if did not involve similar occurrences. However, the evidence involves acts which are alleged to have occurred in different states at different times. Moreover, the Court is confident that based on the other testimony and evidence and jury instructions, the possibility of confusing or misleading the jury will be extremely remote. Finally, because the evidence appears to be highly probative, it would not be a waste of time.

The Government asks the Court to inquire whether the Defendant intends to use an "innocent bystander" defense and, if so, allow the Government to present evidence of the Utah scheme under Rule 404(b). The Government further states it intends to propose a limiting jury instruction advising the jury of the appropriateness of the use of Rule 404(b) evidence.

Based on the foregoing, the Government shall be able to use the Rule 404(b) evidence if the Defendant employs an "innocent bystander" defense, as provided in this Order. The Court will make a determination prior to the proposed testimony.

<u>Ergo</u>, the Government's Notice of Intent to Offer Evidence Rule 902(11) [d/e 66] and Rule 902(12) [d/e 68] are both ALLOWED.

The Defendant's Motion in Limine to Exclude Rule 902(11) & (12) Evidence [d/e 72] is DENIED.

The Defendant's Motion in Limine to Exclude the Proposed Expert Testimony [d/e 73] is DENIED, subject to the qualification of the witness as an expert.

The Government's Motion in Limine to restrict the Defendant from impeaching Amberly Michelle Martin and Paola Gallego [d/e 70] is ALLOWED IN PART and DENIED IN PART, as provided:

The Defendant is not restricted from impeaching Martin with two petit theft convictions and her felony possession of cocaine conviction and subsequent violation of probation.  The Defendant is restricted from impeaching Martin with prostitution and breaking and entering convictions.

The Defendant is not restricted from impeaching Gallego with a pending possession of marijuana charge out of Osceola County, Florida.

The Government's Notice of Intent to Introduce Rule 404(b) Evidence [d/e 71] is ALLOWED and the Defendant's Objection thereto [d/e 86] is DENIED, as provided in this Order to the extent that the Defendant employs an "innocent bystander" defense.

IT IS SO ORDERED.

Enter: May 15, 2014

FOR THE COURT:

_____s/Richard Mills_____
Richard Mills
United States District Judge